IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HIFIECE R. SALTERS,                    :
                                       :
    Plaintiff,                     :
                                       :
    vs.                            :     CIVIL ACTION NO.   3:05-01575
                                       :     (JUDGE KOSIK)
SUPERINTENDENT R. SHANNON   :
and                                    :
HEARING EXAMINER K. KANE      :
                                       :
    Defendants.                    :

## MEMORANDUM AND ORDER

### Background

   This is a civil rights action filed pursuant to 42 U.S.C. §1983 by Hifiece D. Salters,

an inmate currently confined at the State Correctional Institution at Smithfield (SCI

Smithfield), Pennsylvania.  Salters also filed an application seeking leave to proceed

*in forma pauperis* in this matter.[1]  The events relevant to this suit occurred while

Salters was incarcerated at SCI Frackville.  The defendants in this action are a

Superintendent and a Disciplinary Hearing Examiner at SCI Frackville.

   In his complaint, Salters claims that the defendants prohibited him from calling

witnesses at a disciplinary hearing relating to an incident that allegedly took place on

December 4, 2004.  On that date, an inmate named J. Rightly reported to prison

officials that he was physically attacked by Salters.  A disciplinary hearing was held on

---

[1]

   Salters completed this court's form application for leave to proceed *in forma pauperis* and authorization form.  An Administrative Order was thereafter issued on August 5, 2005 (Doc. 5), directing the warden to commence deducting the full filling fee from Salters' prison trust fund account.

December 7, 2005 before defendant, Kevin Kane.  Prior to the hearing, Salters provided the names of three witnesses that he claims were with him at the time of the assault and who, according to Salters, could have confirmed that he was not involved in the attack.  At the beginning of the hearing, Salters requested an attorney and asked if the hearing could be discontinued until he was informed if criminal charges would be filed against him.  Defendant Kane denied Salters' requests for an attorney, the witnesses and a discontinuance.  Salters pleaded not guilty to the allegations and presented his arguments to defendant Kane.  The examiner then ended the hearing to interview the alleged victim, Rightly.  Roughly three hours later, defendant Kane informed Salters of his guilty verdict.  Salters was given ninety (90) days in disciplinary confinement as a result.  Salters has not alleged that he lost any good time credits as a result of the incident.

Salters appealed the hearing decision to the Program Review Committee on the basis of improper procedure, insufficient evidence, and disproportionate punishment.  A three member panel sustained the verdict on December 14, 2004.  Salters made a second appeal to defendant, Superintendent Shannon.  The defendant denied Salters' appeal on January 5, 2005.  A final appeal was made to the Department of Corrections Chief Hearing Officer, Robert Bitner.  Mr. Bitner upheld the decisions of the Program Review Committee and Superintendent Shannon on January 27, 2005.

On May 9, 2005, a criminal complaint was filed against Salters arising from the alleged assault on Rightly.  An Affidavit of Probable Cause completed on May 10, 2005 was provided to this court by Salters.  The affidavit signed by a Pennsylvania State Police Trooper asserts that Salters approached Rightly's cell on December 4,

2004 and handed Rightly a list of items that he wanted Rightly to pick up from the commissary. Rightly told Salters to "shove it." Rightly claimed that Salters then stated, "if you don't get my stuff, I'm gonna kill you." Later on the same date, Rightly was confronted by Salters while the inmates made their way to the dining hall for dinner. Salters attacked Rightly, inflicting a broken nose with two stitches, fractured right orbital, a bruise to the rear of his head, a bruised rib and seven stitches to the right side of his mouth. A preliminary hearing was held on June 1, 2005 at SCI Frackville before a District Magistrate. A trial date has not been scheduled.

Salters filed his complaint in this 42 U.S.C. §1983 action on August 5, 2005. In addition to the claim that he was denied counsel and the ability to present witnesses in his defense at the disciplinary hearing, Salters complains that the defendants failed to notify him that a criminal investigation was underway and that the Affidavit of Probable Cause impermissibly contained documents related to the disciplinary investigation. Salters contends that his due process rights and "D.O.C. rights" were violated. Salters seeks injunctions precluding the use of any institutional files in the criminal case, prohibiting the defendants from retaliating against Salters, and permitting Salters to communicate with witnesses, as well as a transfer from SCI Frackville. Salters also seeks compensatory damages in the amount of $45,000 and punitive damages totaling $80,000 against each defendant.

**Discussion**

Section 1915(e)(2) of Title 28 of the United States Code provides:

> Notwithstanding any filing fee, or any portion thereof, that
> may have been paid, the court shall dismiss the case at
> any time if the court determines that– (A) the allegation of

3

poverty is untrue; or (B) the action or appeal–(i) is frivolous or malicious; (ii) ***fails to state a claim on which relief may be granted***; or (iii) seeks monetary relief against a defendant who is immune from such relief.

(Emphasis added).  Federal Rule of Civil Procedure 12(b)(6) allows a defendant, in response to a complaint, to file a motion to dismiss a claim or claims for "failure to state a claim upon which relief can be granted . . .."  The above section of the United States Code provides this Rule 12(b)(6) ground for summary dismissal of a complaint before service.  Pursuant to Rule 12(b)(6) analysis, the court must accept the veracity of a plaintiff's factual allegations.  *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir. 1990).  "The test for reviewing a 12(b)(6) motion is whether under any reasonable reading of the pleadings, plaintiff may be entitled to relief."  *Simon v. Cebrick*, 53 F.3d 17, 19 (3d Cir. 1995).

To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person action under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).  It is well established that, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . .. Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  Further, liability may not be imposed under § 1983 on the traditional standards of *respondeat superior*.  *Id.*

The Fourteenth Amendment of the United States Constitution provides, "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law . .

..”  The Supreme Court provided a two-part analysis to be applied in procedural due process cases.  First, a court must determine, “whether the asserted individual interests are encompassed within the . . . protection of ‘life, liberty or property.’” *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  Second, “if protected interests are implicated, we then must decide what procedures constitute ‘due process of law.’” *Id.* If there is no protected liberty or property interest implicated in a procedural due process claim, it is unnecessary to determine what procedures were constitutionally mandated.

Prisoners in state institutions do enjoy the protection of the Constitution and the Due Process Clause.  *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974)).  Lawful incarceration, however, “brings about the necessary withdrawal or limitation of many privileges and rights . . ..”  *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal citations omitted).  While prisoners retain some rights under the Due Process Clause, restrictions on those rights are imposed by the nature of the correctional system to which the individuals are lawfully confined.  *Wolff*, 418 U.S. at 556.  Specifically, the Supreme Court has determined that, “[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.”  *Id.*  In *Wolff*, the Court held that the State of Nebraska created prisoner “liberty” rights protected by the Due Process Clause when it enacted a statute providing for early release based upon a prisoner’s accumulation of good time credits.  *Id.* at 557; *see also Sandin*, 515 U.S. at 483-84 (holding states may create liberty interests which are protected by Due Process Clause). The *Wolff* Court

found that any prison disciplinary proceedings that could result in the deprivation of good time credits must provide the inmate with due process. *Id.* The prisoner's circumscribed due process rights required that the state pursue the following minimum procedures: (1) provide written notice of the claimed violation; (2) provide the accused prisoner with a written statement of the evidence relied upon and the reasons for the disciplinary action taken; and, (3) grant a prisoner's request to call witnesses, limited by prison officials', "necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* at 566. The Supreme Court specifically excluded from the list of due process rights afforded prisoners two significant rights enjoyed by traditional criminal defendants. Prisoners subject to disciplinary hearings have no right to cross-examine accusers, guards, or other witnesses, and do not have the right to counsel. *Id.* at 569-70.

In *Sandin,* the Supreme Court addressed the issue of whether the type of confinement to which a prisoner is subjected raises a "liberty" interest protected by the Due Process Clause. *Sandin* involved the procedural due process claims of a state prisoner who had been found guilty of misconduct and sentenced to thirty (30) days in disciplinary segregation. During the hearing, the disciplinary committee refused to allow the prisoner to present witnesses in his defense. *Sandin*, 515 U.S. at 483. The *Sandin* plaintiff asserted that the prison officials' refusal to permit his witnesses at the disciplinary hearing and the resulting thirty (30) day disciplinary confinement

6

encroached upon a liberty interest created by Hawaii state regulations governing disciplinary hearings and protected by the Due Process Clause. *Id*. at 484. The Supreme Court disagreed, finding that no liberty interest was implicated. The Court held that the plaintiff's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. at 486. The Supreme Court concluded that, "neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded [the prisoner] a protected interest that would entitle him to the procedural protections set forth in *Wolff*." *Id.* at 487.

Like the prisoner in *Sandin*, the instant plaintiff asserts that the defendants violated his due process rights and state prison regulations when they denied him the opportunity to present witnesses at his misconduct hearing and subjected him to ninety (90) days in disciplinary confinement. Unlike the *Wolff* plaintiff, Salters does not allege that the defendants' actions affected his good time credit or otherwise extended his prison sentence. We are constrained by the Supreme Court's *Sandin* to rule that ninety (90) days in disciplinary confinement does, "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. Neither the Due Process Clause, nor any Pennsylvania prison regulation, afford Salters with a protected liberty interest that would entitle him to the procedural protections enumerated in *Wolff*. *See Id.* at 487; *see also Griffen v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) (holding fifteen months of restrictive custody did not trigger a constitutionally protected liberty interest). Absent a protected liberty

interest, we will not address whether the defendants' refusal to permit witnesses to testify on Salters' behalf constitutes a denial due process of law.  *See Ingraham*, 430 U.S. at 672 (holding court to decide what procedures constitute "due process of law" only if protected liberty interest implicated).

Salters' claims alleging due process violations in the criminal investigation into the December 4, 2004 attack are similarly without merit.  The State Police violated no Constitutionally protected rights by including information from the disciplinary hearing in the criminal complaint and Affidavit of Probable Cause filed with the District Magistrate.  Moreover, Plaintiff has yet to be tried for the attack.  Even if the defendants' actions in connection with the pending criminal trial violated plaintiff's Constitutionally protected rights, we could not grant the injunctive relief sought. Principals of federalism and the Eleventh Amendment to the Constitution preclude federal district courts from interfering with ongoing state criminal prosecutions.  *See Younger v. Harris*, 410 U.S. 37, 56 (1971) (holding no federal interference with state criminal prosecutions unless risk of irreparable injury is both great and immediate).

Accepting Salters' allegations as true, neither the defendants' actions during the disciplinary hearing, nor the Commonwealth's actions in the current criminal case can serve as the basis for a viable 42 U.S.C. §1983 claim.  Accordingly, we will dismiss Salters' complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) as we have determined "that . . . the action . . . fails to state a claim on which relief may be granted." An appropriate order follows.

**AND NOW, THIS 7ᵗʰ DAY OF SEPTEMBER, 2005, IT IS HEREBY ORDERED THAT:**

      [1] Plaintiff's complaint (Doc. 1) is dismissed for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B);

      [2] the Clerk of Court is directed to close this case; and,

      [3] any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

 

 

                          s/Edwin  M.  Kosik
                          United States District Judge